<u>CLOSED</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| RAMADA WORLDWIDE, INC. | : | |
| a Delaware Corporation, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| v. | : | |
|  | : | |
|  | : | CIVIL ACTION NO. 05-3311 (JCL) |
| JAY-DHARMA, LLC, RAMESH | : | |
| V. PATEL, an individual, VEENA | : | |
| PATEL, an individual, and | : | **OPINION** |
| DHARMESH PATEL, an individual, | : | |
|  | : | |
| Defendants. | : | |
| _____ | : | |

### <u>LIFLAND, District Judge</u>

Plaintiff Ramada Worldwide, Inc. ("Ramada" or "Plaintiff") moves for final judgment by default, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2), against Jay-Dharma, LLC ("Jay-Dharma" or "Defendant") for breach of a franchise licensing agreement ("License Agreement"), and violations of the Lanham Act. For the reasons stated herein, Ramada's motion will be granted in whole as to liability, and in part as to damages.

### I.    <u>Background</u>

Ramada, a Delaware corporation with its principal place of business in

Parsippany, New Jersey, is a franchisor of guest lodging facilities.  (Compl. ¶¶ 1,

11.)  Jay-Dharma is a limited liability corporation existing under the laws of

Alabama.  (Id. ¶ 2.)   Ramesh V. Patel ("R. Patel") is a citizen of Alabama; Veena

Patel ("V. Patel") is a citizen of Alabama; Dharmesh Patel ("D. Patel") is a citizen

Virginia.  (Id. ¶¶ 3-5.)  Subject matter jurisdiction over this action is based on

diversity of citizenship, pursuant to 28 U.S.C. § 1332.  The Court has personal

jurisdiction over the Defendants pursuant to the License Agreement, wherein they

consented to the "personal jurisdiction of and venue in . . . the United States

District Court for the District of New Jersey."  (Id. ¶¶ 8-9; Ex. of Kathy Cox in

Supp. of Plaintiff's Motion for Def. J. ("Cox Aff."), Ex. A, § 17.4.)

On January 13, 2000, Ramada entered into the License Agreement with Jay-

Dharma, R. Patel, V. Patel, and D. Patel, for the operation of a 98-room guest

lodging facility located in Anniston, Alabama, Site No. 2419 (the "Facility").

(Compl. ¶ 20; Cox Aff., Ex. A.)  Jay-Dharma was obligated to operate the Facility

as a Ramada guest lodging facility for 15 years, during which time Jay-Dharma

was permitted to use the Ramada Marks[1] in association with its operation of the

---

[1] The Ramada guest lodging facility franchise system is comprised of
various trade names and service marks (which are on the principal register of the
United States Patent and Trademark Office), logos and derivations thereof (the
"Ramada Marks").  (Cox. Aff. ¶ 3.)

2

Facility as part of Ramada's franchise system. (Compl. ¶ 21, Ex. A § 5; Cox. Aff. ¶ 9.) According to the License Agreement, Jay-Dharma was required to operate the Facility in compliance with Ramada's "System Standards," including Ramada's quality assurance requirements. (Compl. ¶¶ 22-23, Ex. A § 3.4.) Furthermore, Jay-Dharma was required to make certain periodic payments to Ramada for royalties, marketing assessments, taxes, interest, reservation system assessments and other fees (collectively, "recurring fees"). (Id. ¶ 24, Ex. A § 7.) Failure to "pay [Ramada] when a payment is due, [or failure to] perform any . . . other obligations when [the License] Agreement and the System Standards Manual require" constitutes a "default" under the License Agreement. (Id., Ex. A. § 11.1.)

Under section 11.2, Ramada had the right to terminate the license if, inter alia, Jay-Dharma (a) failed to pay any amount due to Ramada under the License Agreement within 10 days after receiving Ramada's written payment demand, (b) failed to remedy any other defaults of its obligations under the License Agreement within 30 days of receiving written notice from Ramada of such defaults, or (c) received two or more notices of default in a one-year period, regardless of whether Jay-Dharma cured such defaults. (Id. ¶ 25; Cox. Aff., Ex. A.) Termination of the License Agreement under section 11.2 obligated Jay-Dharma to pay liquidated damages to Ramada. (Compl. ¶ 26; Cox. Aff., Ex. A § 12.1.) R. Patel, V. Patel,

and D. Patel provided Ramada with a Guaranty of Jay-Dharma's obligations under the License Agreement, whereby they agreed to "immediately make each payment and perform or cause Licensee to perform, each unpaid or underperformed obligation of Licensee under the [License] Agreement" upon a default by Jay-Dharma.  (Id. ¶¶ 28-29, Ex. B.)

On March 13, 2002, Ramada conducted a quality assurance inspection of the Facility.  (Compl. ¶ 31.)  In a letter dated March 14, 2002, Ramada notified Jay-Dharma that the Facility failed the inspection, and that if the Facility did not pass re-inspection, Jay-Dharma would be in default under the License Agreement. (Id. ¶ 31, Ex. C.)  Jay-Dharma failed to respond or cure the alleged default.

On October 1, 2002, Ramada conducted another quality insurance inspection, and determined that the Facility, again, was not in compliance with Ramada's quality standards.  (Id. ¶ 32, Ex. D.)  In a letter dated December 27, 2002, Ramada notified Jay-Dharma that it failed the October 1, 2002 inspection, that it was now in default under the License Agreement, and that if it did not pass re-inspection, the License Agreement would be terminated.  (Id.)

On April 9, 2003, Ramada conducted a third quality insurance inspection of the Facility, and for a third time the Facility failed to meet Ramada's quality standards.  (Id. ¶ 33, Ex. E.)  In a letter dated April 18, 2003, Ramada notified Jay-

Dharma that it failed the April 9, 2003 inspection, that it was in continuing default under the License Agreement, and that Ramada intended to terminate the License Agreement effective August 1, 2003, unless the Facility received a passing score on a July 17, 2003 quality assurance re-inspection.  (Id.)

In a letter dated August 1, 2003, Ramada notified Jay-Dharma that it terminated the License Agreement, effective August 1, 2003, for failing to cure its default under the License Agreement.  (Id. ¶ 34, Ex. F.)  The letter further informed Jay-Dharma that it must, within 14 days, remove all items from the Facility that display or refer to the Ramada marks.  (Id.)  The letter also demanded immediate payment of $6,349.45 in recurring fees due as of July 29, 2003, recurring fees incurred through the date Jay-Dharma completed removing all Ramada marks from the Facility, and liquidated damages of $196,000.00 as specified in the License Agreement. (Id.)

Ramada discovered during inspections of the Facility on December 18, 2003, February 12, 2004, and June 30, 2004, that Jay-Dharma was continuing to use Ramada marks to rent rooms to the public. (Id. ¶¶ 38-39, Ex. G.)  After a November 3, 2004 inspection, Ramada was satisfied that the Facility was in compliance with its obligation under the License Agreement to cease using Ramada marks to rent rooms to the public.  (Cox Aff. ¶ 33, Ex. A.)

Plaintiff filed this action on June 30, 2005 against Jay-Dharma, R. Patel, V. Patel, and D. Patel.  In count one, Ramada alleges that Defendants violated sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)[2] and 1125(a),[3] and requests compensatory damages, treble damages, attorneys' fees, pre-judgment interest, and costs.  Count two requests disgorgement of profits and restitution for Defendants' unauthorized use of Ramada marks.  Count three claims Defendants owe Ramada $196,000.00 in liquidated damages under the License Agreement.  In the alternative, Ramada seeks actual damages resulting from the premature termination of the License Agreement in count four.  Count five requests $10,951.25 that Plaintiffs claim Defendants owe in past-due

---

[2] Section 1114(1)(a) provides in pertinent part:
Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

[3] Section 1125(a) provides in pertinent part:
Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . .

recurring fees.  In count six, Plaintiff seeks an unspecified amount of recurring

fees "that should be paid to compensate [Ramada] for the period during which Jay-

Dharma misused the Ramada Marks and was thereby unjustly enriched."  (Compl.

¶ 73.)  Finally, count seven seeks to recoup all of the above monies from the

individual Defendants as Jay-Dharma's Guarantors under the License Agreement.

The record indicates that Jay-Dharma, R. Patel, and V. Patel were properly

served with process on July 14, 2005; D. Patel was served on July 18, 2005.  On

August 28, 2005, the parties requested and received a consent order extending

Defendants' time to answer the Complaint to August 31, 2005.  Defendants,

however, failed to answer or otherwise plead with respect to the Complaint as

required by Rule 12(a).  On December 7, 2005, the individually named Defendants

filed a "Suggestion of Bankruptcy Filing" with the Court demonstrating that R.

Patel and V. Patel filed for Chapter 7 bankruptcy with the Bankruptcy Court for

the Western District of Texas, and that D. Patel filed for Chapter 7 bankruptcy

with the Bankruptcy Court for the Eastern District of Virginia.

On December 28, 2005, Ramada petitioned the Clerk of the Court for an

entry of default against Jay-Dharma (but not the individually named Defendants)

pursuant to Rule 55(a).  On December 30, 2005, the Clerk of the Court entered

Default against Jay-Dharma for failure to appear.  On February 17, 2006, Plaintiff

submitted the instant motion, seeking default judgment against Jay-Dharma.  The record indicates that Ramada served Jay-Dharma with notice of its motion.

## II.   Discussion

### A.   Default Judgment

#### i.   Standard of Review

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment.  The party against whom default judgment is requested must have been properly served with process.  Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Rule 55(a); see Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2682, at 13 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, however, even where the defendant was served with process, and where the default has been noted pursuant to Rule 55(a).  See, e.g., Local Union No. 98, IBEW v. Cableco, Inc., No. 99-0755, 1999 U.S. Dist. LEXIS 7024, at *3 (E.D. Pa.

Apr. 28, 1999) (citing  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303

(3d Cir. 1995)).  Rather, a court is "required to exercise sound judicial discretion

in deciding whether to . . . enter default judgment."  Id.  Default judgment is

generally disfavored because it prevents resolution of a plaintiff's claims on the

merits.  Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).  Thus, when

considering a motion for default judgment, a court may consider the following

factors: the potential amount of damages; whether issues of material fact or

substantial public concern are implicated; whether the default is primarily

technical; whether the moving party has been substantially prejudiced by the delay

involved; whether the grounds for default are clearly established or in doubt;

whether the default was attributable to good faith, mistake, or excusable neglect;

and whether the court may later be obliged to set aside the default.  Franklin v.

Nat'l Maritime Union of Am., No. 91-0480, 1991 U.S. Dist. LEXIS 9819, at *1

(D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Federal Practice and

Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).

          "A default judgment entered by the court binds the party facing the default

as having admitted all of the well pleaded allegations in the plaintiff's complaint."

Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th

Cir. 2004) (citing Fed. R. Civ. P. 55(b)(2)).

### ii.  Ramada is Entitled to Default Judgment as to Liability against Jay-Dharma

Here, the record indicates that Plaintiff effectuated service of process on Jay-Dharma.  Default was entered by the Clerk.  Furthermore, although notice of the instant motion is not required in order to enter a default judgment under Rule 55(b)(2), the record indicates that Jay-Dharma was served with notice of the motion for default judgment and supporting documents on or about February 17, 2006, via Federal Express.  Thus, the Court is satisfied that Jay-Dharma had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the Complaint as true and admitted by Jay-Dharma.  As described above, Jay-Dharma failed to ensure the Facility's compliance with Ramada's System Standards including its quality assurance requirements are required by section 3.4 of the License Agreement.  This constituted a default under section 11.1.  Jay-Dharma failed to remedy this default within 30 days of receiving (repeated) written notices from Ramada, and thus Ramada was justified in terminating the License Agreement under section 11.2.

Furthermore, as also described above, Jay-Dharma failed to pay all past-due

10

recurring fees, within 10 days of receiving written notice, to Ramada upon

termination of the License Agreement.  This failure constitutes a default under

section 11.1, and as a result, gave Ramada additional grounds to terminate the

License Agreement under section 11.2.  Thus, the Court finds Jay-Dharma liable

for breach of the License Agreement.

Ramada has also established violations of sections 32 and 43(a) of the

Lanham Act.   A violation of section 43(a) of the Lanham Act is established if

Defendant's use of the Ramada marks is "likely to create confusion concerning the

origin of the goods or services."  S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d

371, 375 (3d Cir. 1992) (citing Opticians Ass'n of America v. Independent

Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)).  To prevail on an

infringement claim under section 32 of the Act, Ramada must demonstrate as well

that Defendant's use of the marks was unauthorized.  Id. (citing United States

Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981)).

The Third Circuit has held that "there is a great likelihood of confusion

when an infringer uses the exact trademark" as the plaintiff.  Opticians, 920 F.2d

at 195 (citing Jaycees, 639 F.2d at 142).  Ramada and Jay-Dharma were using the

same legally protectable trademark, owned by Ramada.  There is, therefore, no

question that their concurrent use is highly likely to cause consumer confusion

about Jay-Dharma's affiliation with Ramada.  Ramada has thus shown a violation of section 43(a).

It is also apparent that Jay-Dharma's continued use of the trademark was unauthorized, in violation of section 32.  See 15 U.S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant--(a) use in commerce any reproduction . . . of a registered mark . . . in connection with which such use is likely to cause confusion."); ITT Industries, Inc. v. Wastecorp, Inc., 87 F. App'x. 287, 293 (3d Cir. Feb. 6, 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public.  It has been described as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.").  Ramada formally terminated the License Agreement on August 1, 2003, rendering any subsequent use of the Ramada marks by Defendants violative of section 32.  Defendants continued to use those marks until at least June 30, 2004.  Thus, Ramada has shown a violation of section 32.

The public concern for enforcing the Lanham Act and contracts such as here weighs in favor of entering default judgment in this matter.  The failure to enter a default judgment would prejudice Ramada in its ability to enforce its rights under the Lanham Act and the License Agreement.  There is no evidence that Jay-Dharma's failure to answer the summons and Complaint in this matter or to

respond to the motion for default judgment may be attributed to a good-faith explanation, mistake, or excusable neglect.  After reviewing Plaintiff's Complaint and the affidavits of Lois Goodman and Kathy Cox in support of the motion for default judgment, the Court is satisfied that Plaintiff has sufficiently established the factors necessary to warrant entry of a default judgment on its breach of contract and Lanham Act claims.

      **B.**   **Damages**

         **i.**   **Standard of Review**

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Under Rule 55(b)(2) a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages." There are certain limited situations, however, where a district court can enter a final judgment without requiring further evidence of damages.  KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).

First, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary.  Fed. R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149.  A

claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." KPS Assocs., 318 F.3d at 19. "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." Id. at 19-20 (internal quotations omitted).

Second, claims for liquidated damages also do not require further evidentiary inquiry. Id. at 20 (citing 46 Am. Jur. 2d Judgments § 313). Typically, liquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law. Id.

Even when faced with claims for either uncertain or unliquidated damages, a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" Id. at 21 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

### ii.   Ramada's Entitlement to Damages

Here, Ramada seeks a combination of liquidated and unliquidated (and uncertain) damages from Jay-Dharma. (See Cox Aff. ¶¶ 29-45.) Specifically, it seeks past-due recurring fees, interest on the past-due recurring fees, liquidated

14

damages, interest on the liquidated damages, infringement damages under the Lanham Act, and attorneys' fees and costs.[4]  The Court will address each in turn.

a.    Recurring Fees

_____Under the umbrella of "recurring fees," section 7 of the License Agreement requires Defendants to pay royalties, service assessment fees, taxes, and interest "on any past due amount . . . at a rate of 1.5 percent per month."  (Compl. Ex. A.) Ramada seeks $10,378.57[5] in recurring fees, and has attached an itemized statement of those fees to the Cox Affidavit.  (Cox. Aff. ¶ 34, Ex. B.)  Thus, the Court is satisfied that Ramada has demonstrated the amount of recurring fees owed by Jay-Dharma, and will grant Ramada default judgment in the amount of $10,378.57.

b.    Interest on Past-Due Recurring Fees

Section 7.3 of the License Agreement applies interest on past-due recurring

_____

[4] Ramada sought a broader range of relief in the counts of its Complaint than it requested in its motion for default judgment and accompanying affidavits.  The Court will rely on Plaintiff's renewed requests for relief in the Cox and Goodman Affidavits.

[5] Ramada originally sought $10,951.25 in past-due recurring fees in count five of its Complaint. (Compl. ¶ 67.)  Ramada does not explain why this figure has changed in the Cox Affidavit, submitted with its motion for default judgment; however, because this figure is lower than the recurring fees sought in the Complaint, and because Ramada provided documentation substantiating the $10,378.57 figure (see Cox. Aff., Ex. H.), the Court will rely on this lesser figure.

fees at a rate of 1.5 percent per month "accruing from the due date until the amount is paid." (Compl. Ex. A.) One-and-a-half percent of the past-due recurring fees, $10,378.57, is equal to approximately $155.68[6] in monthly interest. This figure, multiplied by 30.45, the number of months that elapsed from August 31, 2003 (30 days after the date of termination), until the return date, March 13, 2006, equals $4,740.41. The License Agreement provides for the interest Ramada requests, and thus, the Court is satisfied that Ramada is entitled to default judgment for interest on the past-due recurring fees in the total amount of $4,740.41.

### c.    Liquidated Damages

In the event of a termination of the License Agreement under section 11.2, section 12.1 obligates Jay-Dharma to pay liquidated damages to Ramada. (Cox. Aff. ¶ 31, Ex. A.) Section 12.1 contains a formula for computing the liquidated damage amount designed to compensate Ramada for two years of the revenue it will lose as a result of the premature termination of the License Agreement.[7] (Id. ¶

---

[6] The exact monthly interest figure is $155.67855.

[7] Ramada claims, that in its experience, two years is typically required to replace a terminated hotel property in a given market. (Cox. Aff.¶ 33.) The liquidated damage amount is intended to compensate Ramada for lost future recurring fees, i.e., actual damages. (Id. ¶ 36.)

33.) Jay-Dharma obligated itself to pay, within 30 days of termination, the greater of "an amount equal to the sum of accrued Royalties and RINA Services Assessment Fees during the immediately preceding 24 full calendar months," or "the product of $2,000 multiplied by the number of guest rooms in the Facility." (Id. ¶ 37, Ex. A, § 12.1.) The Facility's accrued Royalties and RINA Services Assessment Fees for the 24 calendar months preceding the termination date totaled approximately $79,223. (Id. ¶ 37, Ex. I.) This amount is lower, however, than the product of $2,000.00 multiplied by 98, the number of guest rooms in the Facility: $196,000.00. Thus, Jay-Dharma owes $196,000.00 in liquidated damages. No further evidence is required to substantiate this amount. See KPS Assocs., 318 F.3d at 20. Thus, the Court will grant Ramada default judgment in the amount of $196,000.00 in liquidated damages.

## d.   Interest on Liquidated Damages

Ramada asserts that it is entitled to $89,523.00 in interest on the liquidated damages amount, calculated at a rate of 1.5 percent per day starting August 31, 2003 (30 days after the termination date), and continuing until the March 13, 2006 return date. (Cox. Aff. ¶ 38.) The License Agreement does not contain a provision requiring Defendants to pay interest on liquidated damages. Under New

Jersey law[8] however, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, 62 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1070 (N.J. 1988)).  Pre-judgment interest can be awarded on either liquidated or unliquidated damages, Geroge H. Swatek, Inc. v. North Star Graphics, Inc., 587 A.2d 629, 632 (N.J. Super. Ct. App. Div. 1991), in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Id. (quoting Ellmex Constr. Co. Inc. v. Republic Ins. Co. of Am., 323 A.2d 495, 512 (N.J. 1974)).  The "basic consideration" in awarding pre-judgment interest

> is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

County of Essex v. First Union Nat'l Bank, 891 A.2d 600, 608 (2006) (internal

---

[8] Section 17.5 of the License Agreement states that "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey." (Cox. Aff.., Ex. A.)  "A contractual choice of law provision applies, with certain limitations, to issues that the parties 'could have resolved by an explicit provision' of the contract." Berg Chilling Sys. v. Hull Corp., 435 F.3d 455, 465 (3d Cir. 2006) (citing Restatement (Second) of Conflicts of Law § 187(1)).  Because the application of interest to liquidated damages is an issue the parties could have resolved by provision in the License Agreement, the Court will give effect to the choice-of-law provision, and apply New Jersey law.

quotations omitted).

Here, because Ramada has been denied use of the $196,000.00 liquidated damages amount since it became due, the Court is satisfied that awarding Ramada interest is appropriate.  One-and-a-half percent of the liquidated damages is equal to $2,940.00 in monthly interest.  This figure, multiplied by 30.45, the number of months that elapsed from August 31, 2003, until March 13, 2006, equals $89,523.00.  (Cox. Aff., ¶ 38.)  Accordingly, default judgment for interest on liquidated damages will be entered in the amount of $89,523.00.

### e.   Infringement Damages

Section 35 of the Lanham Act allows a victorious Plaintiff to recover, inter alia, "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a).  Additionally, a district court may, depending on the circumstances of the case, use its discretion to treble the actual damage award.  Id.  To determine the amount of damages sustained, some courts have used the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement.  See A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208-08 (3d Cir. 1999) (en banc) (citing, among others, Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519-20 (11th Cir. 1990), and Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg. Inc., 597 F.2d 71, 75-76 (5th Cir. 1979)); see

19

also <u>Ramada Inns, Inc. v. Gadsden Motel Co.</u>, 804 F.2d 1562, 1565 (11th Cir. 1986) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." (internal quotations omitted)).

Ramada seeks $285,796.80 in damages for Ramada's infringement from August 1, 2003 to June 30, 2004, the last date on which infringement could be confirmed. (Cox Aff. ¶ 39.) However, Ramada incorrectly bases this figure upon a 30-month period of infringement (Cox. Aff. ¶ 43.), when, as it acknowledges, the infringement period was only from August 1, 2003 through, June 30, 2004, or 11 months. By the Court's calculations, $104,791.98 is the appropriate amount of Lanham Act damages. The Facility's reported gross room revenue from June 1, 2001 through May 31, 2003, was $448,308. (Cox Aff. ¶ 40, Ex. J.) This figure, divided by 12 months produces an average monthly gross room revenue of $37,359.00 for the Facility. The average monthly gross room revenue multiplied by 11 months, the period of infringement, produces an estimated amount of gross room revenue for the infringement period of $410,949.00. Pursuant to sections 7.1.1 and 7.1.2 of the License Agreement, Jay-Dharma was obligated to pay 8.5 percent of its gross room revenues to Ramada; 4 percent for a "Royalty," and 4.5 percent for a "RINA Services Assessment Fee." Eight-and-a-half percent of $410,949.00 equals $34,930.66.

20

Ramada requests that the Court treble the infringement damages.  (Cox. Aff. ¶ 44.)  Under 15 U.S.C. § 1117(b), the Court "[i]n assessing damages under [§ 1117(a)] . . . shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, . . . in the case of any violation of section 32(1)(a) of this Act (15 U.S.C. § 1114(1)(a))." Treble damages are only to be imposed, however, if the defendant's infringement was intentional, knowing, or willfully blind.  See Microsoft Corp. v. CMOS Techs., 872 F. Supp. 1329, 1339-41 (D.N.J. 1994) (citing Louis Vuitton S.A. v. Lee, 875 F.2d 584, 588-90 (7th Cir. 1989) (Posner, J.)).  The record here demonstrates that, at the very least, Jay-Dharma's infringement was willfully blind.  Jay-Dharma was informed by Ramada that it was required to remove the Ramada marks after the August 1, 2003 termination (Cox. Aff., Ex. E (letter dated August 1, 2003)), and that its failure do so constituted "willful trademark infringement" (Cox. Aff., Ex. F (letter dated May 10, 2004)).  Nevertheless, Jay-Dharma proceeded to infringe Ramada's trademarks until at least June 30, 2004.

Furthermore, an "extenuating circumstance[]" that would justify not imposing treble damages does not exist in this case.  Congress has indicated that under § 1117(b), "it will be a rare case in which a defendant who has trafficked in goods or services using a mark that he or she knows to be counterfeit can show

that he or she should not be assessed treble damages." <u>Microsoft Corp</u>, 872 F.

Supp. at 1339 (quoting Joint Explanatory Statement, 130 Cong. Rec. H. 12,076 at

12, 083 (Oct. 10, 1984)).  The Court has no reason to believe that this is such a

rare case.  Thus, the Court will treble the damage award of $34,930.66, and

accordingly, default judgment for infringement damages under the Lanham Act

will be entered in the amount of $104,791.98.

f.     <u>Attorneys' Fees & Costs</u>

Although section 17.4 of the License Agreement requires the "non-

prevailing party [to] pay all costs and expenses, including reasonable attorneys'

fees, incurred by the prevailing party to enforce this Agreement or collect amounts

owed under this Agreement," (Compl., Ex. A.), Ramada has failed to support its

claim for $5,600.00 in attorneys' fees and costs.  The conclusory allegations in the

Goodman Affidavit will not suffice.  (<u>See</u> Aff. of Lois H. Goodman in Supp. of

Pl.'s Motion for Def. J. ¶¶ 7-9.)  The Court will require descriptive time entries

from counsel's billing records to be reviewed <u>in</u> <u>camera</u>.  Otherwise, the Court will

schedule a Rule 55(b)(2) damages hearing on the issue.

## III.  <u>Conclusion</u>

In sum, the Court finds Jay-Dharma liable for breach of contract and for

violations of the Lanham Act and will enter default judgment for Plaintiff in the amount of $405,433.96.[9]  As for Ramada's request for attorneys' fees and costs, a damages hearing is appropriate under the circumstances, unless within 30 days Ramada provides the necessary supplemental information referred to above.


**/s/ John C. Lifland, U.S.D.J.**

**Date: October 23, 2006**

---

[9] This figure reflects the sum of $10,378.57 in past-due recurring fees, $4,740.41 interest on past-due recurring fees, $196,000.00 in liquidated damages, $89,523.00 in interest on liquidated damages, and $104,791.98 in Lanham Act damages.